IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LARONDA PHOX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-00846-SRB |
| | ) |
| 21C MANAGEMENT LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant 21c Management LLC's ("Defendant") Motion for Summary Judgment. (Doc. #109.) As set forth below, the motion is GRANTED.

**I. LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.*

Local Rule 56.1 sets forth a process to determine the facts applicable to a summary judgment motion. Under Local Rule 56.1(a), a "party moving for summary judgment must begin

its supporting suggestions with a concise statement of uncontroverted material facts. Each fact must be set forth in a separately numbered paragraph and supported" by a citation to the record. L.R. 56.1; Fed. R. Civ. P. 56(c). Under Local Rule 56.1(b), the party opposing summary judgment must:

> begin its opposing suggestions by admitting or controverting each separately numbered paragraph in the movant's statement of facts. If the opposing party controverts a given fact, it must properly support its denial in accordance with Fed. R. Civ. P. 56(c). *Unless specifically controverted by the opposing party, all facts set forth in the statement of the movant are deemed admitted for the purpose of summary judgment.*

L.R. 56.1(b)(1) (emphasis added).

As an initial matter, Defendant complied with Local Rule 56.1(a). Defendant's suggestions in support contain 102 separately numbered paragraphs of material facts, and each fact is supported by a citation to the record. The *pro se* Plaintiff LaRonda Phox ("Plaintiff") filed an opposition brief. The opposition brief expressly "agree[s]" with most of the facts set forth by Defendant. (Doc. #118, pp. 3-7.)[1] As a result, all facts agreed to by Plaintiff are deemed admitted. (Doc. #118, pp. 3-7, ¶¶ 1, 3-4, 6, 8-9, 21, 23-25, 28-29, 32, 36, 39-40, 42-47, 49-50, 52-56, 60-64, 66, 68, 71, 74, 78-98, 100-102.)

Plaintiff attempts to controvert or deny other facts, but none of her responses contain a citation to the record or other evidence as required by Rule 56(c) and Local Rule 56.1. For example, Plaintiff's responses include the following:

18. Unknown

. . .

22. Disagree, all of the tips turned into the a [sic] manager, at the end of a shift were not recorded on the tip pool worksheet.

. . .

---

[1] All page numbers refer to the pagination automatically generated by CM/ECF.

65. Look.

(Doc. #118, pp. 4-6.)

Plaintiff's status as a *pro se* litigant does not excuse her failure to comply with the applicable rules of civil procedure. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (stating that "pro se litigants are not excused from failing to comply with substantive and procedural law"). Because Plaintiff expressly admits certain facts, and failed to properly controvert the remaining facts, all 102 statement of facts submitted by Defendant are deemed admitted. L.R. 56.1(b)(1).[2] Therefore, the following factual discussion is primarily based on Defendant's statement of facts without further quotation or citation unless otherwise noted. The relevant facts are simplified to the extent possible and additional facts are discussed in Section III.

## II. FACTUAL BACKGROUND

Defendant handles all day-to-day operations of the 21c Museum Hotel Kansas City ("21c Museum Hotel"). This includes operation of a museum, hotel, and restaurant known as the Savoy at 21c (the "Savoy"). Defendant hires servers to assist customers at the Savoy.

On or about July 9, 2018, Plaintiff began working for Defendant as an AM Server. Plaintiff's job duties included completing all posted side work and providing an accurate report of all income received during her shift. During Plaintiff's employment, Defendant paid AM Servers an hourly rate of $5.85 per hour, plus tips. Server tips are distributed under the 21c Museum Hotel Tip Pool Guidelines (the "Guidelines"). Under the Guidelines, Defendant utilizes a tip pool, which means that all server tips are turned into a manager at the end of a shift and are then recorded on a tip pool worksheet. Tips are allocated on a point system based on the

---

[2] However, because Plaintiff is proceeding *pro se*, the Court has liberally construed her opposition brief to determine whether summary judgment is warranted. *See, e.g.*, *Sandknop v. Missouri Dep't of Corr.*, 932 F.3d 739, 741 (8th Cir. 2019) (recognizing that *pro se* filings should be construed liberally).

3

employee's position worked in each shift and the number of hours worked. The employee's tips are paid out in his or her paycheck.

Defendant provides certain perks to its employees. The perks include a one-time complimentary dinner for two for up to $75 at the restaurant where the employee works within the employee's first 90 days. In addition, Defendant offers a $40.00 gift certificate to the Savoy for employees who train new employees.

21c Museum Hotel has a no-smoking policy. The no-smoking policy is identified on the hotel's website, and guests are notified of the policy when they book a room. Any guest that violates the no-smoking policy is charged a $250 fee to deep clean the room. When necessary, the hotel uses fans and ozone machines to mitigate the odor. From approximately August 6, 2018 until August 14, 2018, a group of guests known as the "Zook Nance Group" reserved 27 rooms at the 21c Museum Hotel. During their stay, complaints were made about the smell of marijuana in the hotel. Plaintiff worked approximately 31 hours during the time the Zook Nance Group stayed at the hotel, and she delivered room service food orders to them. Plaintiff's employment with Defendant ended on or about October 12, 2021.[3]

On July 31, 2020, Plaintiff filed this lawsuit against Defendant in the Circuit Court of Jackson County, Missouri. Defendant subsequently removed the case to this Court on the basis of federal question and diversity jurisdiction. In general, Plaintiff alleges that Defendant failed to compensate her for all hours worked, failed to pay her the proper amount of tips, and failed to provide her perks to which she was entitled. The remaining claims in this case are (1) Count I—

---

[3] Plaintiff's opposition brief attempts to assert additional material facts, but none of these alleged facts alter the rulings herein. For example, Plaintiff states that Defendant had a "data security breach," and that "Plaintiff has alleged computer issues several times during this case." (Doc. #118, p. 1.) However, Plaintiff has failed to show that her alleged computer issues were caused by a security breach with Defendant's computer system, and/or that any security breach or computer issues support her causes of action.

4

breach of contract for failure to adequately compensate Plaintiff; and (2) Count III for negligence based on Defendant's failure to enforce its non-smoking policy, which caused Plaintiff to begin smoking cigarettes again.[4]

Defendant now moves for summary judgment on both counts. Defendant argues it is entitled to summary judgment on the breach of contract claim because Plaintiff lacks evidence "that a contract even exists, much less the terms of the alleged contract or failure to perform under the contract." (Doc. #113, p. 18.) Defendant argues it is entitled to summary judgment on the negligence claim because Plaintiff lacks evidence that Defendant breached its duty to provide a safe workplace, and because any alleged breach did not cause damages. Plaintiff opposes the motion, and the parties' arguments are addressed below.[5]

### III. DISCUSSION

#### A. Count I—Breach of Contract

In Count I, Plaintiff asserts a claim for breach of contract. Plaintiff alleges that Defendant breached a contract by failing to properly compensate her for performing side work, for attending orientation, for attending a mandatory art show, and/or for other tasks. Plaintiff also alleges that Defendant failed to pay her the proper amount of tips and wrongfully denied her gift certificates and/or other perks.

"A breach of contract claim includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff."

---

[4] Some of Plaintiff's filings refer to a purported claim under the Missouri and/or Federal Clean Air Act. Plaintiff has failed to present any facts or law that would support a cause of action under any clean air act. Therefore, to the extent Plaintiff asserts any such claim, summary judgment is granted in favor of Defendant.

[5] Plaintiff's opposition brief is 8 pages long (including her response to Defendant's statement of facts), contains only a limited discussion of the relevant facts, and does not cite any case law.

*Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 850 (8th Cir. 2014) (applying Missouri law).[6] As discussed below, Plaintiff has failed to show the existence of a valid contract, that Defendant breached any obligation, or that Plaintiff suffered damages as a result.

### 1. The Record Does Not Show the Existence of a Valid Contract

Defendant has a Teammate Policy Guide which contains "general information and guidelines" for its employees. (Doc. #110-4, p. 6.) Among other things, the Teammate Policy Guide discusses performance appraisals, attendance, and job duties. Plaintiff contends that the Teammate Policy Guide created a contract between her and Defendant. Plaintiff appears to believe that the Teammate Policy Guide contained terms regarding how her tips were to be recorded, and that Defendant did not comply with those terms.[7] As set forth below, Plaintiff's arguments are not supported by the applicable facts or law.

First, "[u]nder Missouri law, employee handbooks generally are not considered contracts, because they normally lack the traditional prerequisites of a contract." *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835 (8th Cir. 1997) (applying Missouri law). "An employer's unilateral act of publishing a handbook is not a contractual offer to the employee. Rather, a contract is only formed with the traditional elements of offer, acceptance, and consideration." *Id.*

In this case, the record shows that the Teammate Policy Guide is an employee handbook and not a contract. The Teammate Policy Guide expressly states that "it does not confer any rights, privileges or benefits on any teammate, nor does it create entitlement to continued employment at the Company, establish conditions of employment, *or create an employment*

---

[6] The parties appear to agree, and the Court finds, that Missouri law governs the substantive elements of Plaintiff's claim for breach of contract.

[7] Plaintiff's opposition brief appears to argue that her breach of contract claim is also supported by unidentified "paperwork given" to her. (Doc. #118, p. 3, ¶¶ 12-14.) This argument is rejected because Plaintiff fails to explain what paperwork she relies on, how that paperwork created a valid contract, how Defendant breached the terms of the paperwork, or evidence showing the amount of compensation she is owed under that paperwork.

*contract between teammates and the Company.*"  (Doc. #110-4, p. 6) (emphasis added).  Plaintiff has not produced any evidence to rebut this language, and has not shown that there was an offer, acceptance, or consideration regarding the Teammate Policy Guide or any other alleged written or oral contract.

Under these circumstances, Plaintiff has failed to present evidence of a valid contract and Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

### 2.  Plaintiff has Not Presented Evidence Showing a Breach of Contract or an FLSA Violation

Plaintiff alleges Defendant violated the Fair Labor Standards Act ("FLSA") by failing to compensate her for work performed.  It is unclear whether Plaintiff asserts this violation as a stand-alone statutory claim and/or as part of her breach of contract claim.  Regardless of the legal theory, Plaintiff has failed to present evidence showing that Defendant failed to properly compensate her under the FLSA and/or under any alleged contract.

The FLSA "prohibits the employment of any person for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 795 (8th Cir. 2014) (citations and quotation marks omitted).  The FLSA also requires an employer to compensate "[a]n employee . . . for duties before and after scheduled hours . . . if the employer knows or has reason to believe the employee is continuing to work and the duties are an integral and indispensable part of the employee's principal work activity." *Hertz v. Woodbury Cnty.*, 566 F.3d 775, 781 (8th Cir. 2009) (citations and quotation marks omitted).  To prevail, the plaintiff must "show (1) that the plaintiff has performed compensable work and (2) the number of hours for which the plaintiff has not been properly paid." *Id.* at 783.

7

### a. Side Work

Plaintiff claims Defendant failed to properly compensate her for performing side work. However, according to Defendant's job description, one job duty of an AM restaurant server is to complete "all posted side work." (Doc. #110-2, p. 2.) Plaintiff's opposition brief states that her position subsequently changed from an AM server to an "IRD/Runner," which also changed her side duties. (Doc. #118, p. 3.) Regardless of the position at issue, Plaintiff has not produced evidence showing that she was not compensated for performing side work, for overtime side work, or for performing side work before or after her scheduled hours. As a result, Defendant is entitled to summary judgment on Plaintiff's FLSA and/or breach of contract claim for side work.

### b. New Hire Paperwork and Job Orientation

Plaintiff claims Defendant failed to properly compensate her for filling out new hire paperwork on or about July 9, 2018. Under the FLSA, "[e]mployers are not required to pay employees for insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes[.]" *Lyons v. Conagra Foods Packaged Foods LLC*, 899 F.3d 567, 584 (8th Cir. 2018) (citations and quotation marks omitted). "This legal concept" is "known as the *de minimis* doctrine." *Id.* "Most courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Id.* (citations, alterations, and quotation marks omitted).

In this case, the record shows that it generally takes an individual 5 to 10 minutes to complete new hire paperwork. (Doc. #110-5, p. 9.) The record further shows that completing the paperwork is a one-time, non-recurring event. Although Plaintiff argues it took her "longer than 10 minutes to fill out new hire paperwork," this conclusory assertion is not supported by any evidence or other details. (Doc. #118, p. 3.) Under these circumstances, the time Plaintiff

8

spent filling out new hire paperwork is *de minimis* and not compensable. Because Plaintiff has not presented sufficient evidence to create a genuine factual dispute, summary judgment is granted in favor of Defendant on Plaintiff's claim for time spent on completing new hire paperwork.

Plaintiff also appears to contend that Defendant failed to properly compensate her for completing formal job orientation on July 12, 2018. The orientation included an introduction to team leaders and members, watching videos, and a tour. However, Plaintiff does not dispute that she clocked in at 7:00 a.m., clocked out at 3:00 p.m., and was paid $8.00 per hour for the time she recorded. (Doc. #113, p. 12, ¶ 62; Doc. #118, p. 5, ¶ 62.) Plaintiff has not produced evidence which shows Defendant failed to properly compensate her for formal job orientation.[8] Consequently, summary judgment is granted in favor of Defendant on Plaintiff's FLSA and/or breach of claim for time spent on formal job orientation.

### c. Art Orientation

Plaintiff claims Defendant failed to properly compensate her for attending an art orientation on July 12, 2018. The record shows that Defendant offered art orientation to all staff at 4:00 p.m. on July 12. However, as stated above, Plaintiff clocked in at 7:00 a.m., clocked out at 3:00 p.m., and was compensated for this time. Plaintiff argues that she "attended the art show at 4PM on July 12, 2018." (Doc. #118, p. 4, ¶ 36.) But this conclusion is not supported by any evidence, and even assuming it is true, Plaintiff has not presented any evidence that she actually recorded that time.

---

[8] Plaintiff attached and referred to exhibits in her opposition brief. Some of the exhibits contain handwritten notes that appear to relate to Plaintiff's claims of inadequate compensation and/or her alleged hours worked. (Doc. #118, pp. 29-31.) However, even assuming these exhibits are admissible, they fail to controvert the facts and exhibits submitted by Defendant. For example, with respect to Plaintiff's handwritten notes, the Court agrees with Defendant that they are "self-serving, unsupported allegations, which cannot be relied on to defeat summary judgment." (Doc. #137, p. 6.)

9

Plaintiff also claims she arrived for a mandatory art orientation on August 24, 2018, but was sent home and not compensated. However, Defendant has presented evidence that no art orientation was offered on that date.[9] Even if an art orientation was offered on August 24 and even if Plaintiff was sent home, Plaintiff has not presented evidence showing that she is entitled to compensation for an art orientation she did not attend. Under these facts, summary judgment is granted in favor of Defendant on Plaintiff's FLSA and/or breach of contract claim for compensation related to art orientation.

### d. Tips

Plaintiff alleges that Defendant failed to pay her tips to which she was entitled. To calculate tips among employees, Defendant has Tip Pool Guidelines. Under the guidelines, all tips earned by servers are turned into a manager at the end of each shift and recorded on a tip pool worksheet. A point system is then used to allocate tips based on each employee's position in each shift and the number of hours worked.

The FLSA permits "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A). Defendant has presented evidence showing that it "audited all records on multiple occasions and . . . it paid Plaintiff fairly and legally according to her hours worked and the written tips pool guidelines, as supported by Plaintiff's payroll records." (Doc. #113, pp. 11-12, ¶ 59).[10] Plaintiff does not dispute this statement of fact, and her response simply states "Look." (Doc. #118, p. 5, ¶ 59.)

---

[9] Plaintiff's opposition brief states "Agree?" in response to Defendant's statement of fact that no art orientation was offered on August 24, 2018. (Doc. #113, p. 12, ¶ 64; Doc. #118, p. 5, ¶ 64.)

[10] Defendant's audit did uncover one mistake in compensation. On one or two occasions, Plaintiff mistakenly clocked in under the code for PM server which pays a different hourly rate. After making the necessary adjustments, Defendant paid Plaintiff an additional $22.02 on her August 31, 2018 paycheck. Plaintiff's opposition brief does not dispute these facts. (Doc. #113, p. 11, ¶¶ 54-56; Doc. #118, p. 5, ¶¶ 54-56.)

10

Plaintiff generally argues that she "was not paid properly when all tips were not being properly recorded," and that Defendant failed to follow the tip pool guidelines. (Doc. #118, pp. 2, 4.) However, Plaintiff does not provide any details to support these assertions, including the approximate date she was deprived of tips or the amount of tips that are owed to her. Under these facts, summary judgment is granted in favor of Defendant on Plaintiff's claim for tips under the FLSA and/or under a contract.

### e. Perks

Plaintiff alleges that Defendant was required, but failed, to award her gift certificates and/or other perks. Defendant provides a one-time complimentary dinner for two for up to $75 at the restaurant of the employee's home property during the first 90 days of employment. Defendant also provides a $40.00 voucher to the Savoy to employees who are designated "trainers" to new employees.

Plaintiff alleges Defendant deprived her of these perks but has not produced evidence to support this claim. Defendant has shown, and Plaintiff "agree[s]," that Defendant "extend[ed] Plaintiff the courtesy of using" the $75.00 restaurant certificate. (Doc. #113, p. 11, ¶ 53; Doc. #118, p. 5, ¶ 53.) Defendant has also shown, and Plaintiff "agree[s]," that it provided Plaintiff a $40.00 voucher to the Savoy based on Plaintiff's belief that she had trained another individual. (Doc. #113, p. 11, ¶ 52; Doc. #118, p. 5, ¶ 52.) Although Plaintiff claims that she also "trained 10-new employees and never received a $40.00 gift certificate in regards to this perk offered," Plaintiff does not offer any evidence in support of that conclusion. (Doc. #118, p. 5, ¶ 41.)

Finally, Plaintiff has failed to show a legal entitlement to any particular perk, that any perk was part of Plaintiff's compensation package, or that any perk related to the number of

11

hours she worked.  Therefore, summary judgment is granted in favor of Defendant on Plaintiff's claim under the FLSA and/or under a contract for unpaid gift certificates and/or other perks.

For all these reasons, and for the additional reasons stated by Defendant, summary judgment is granted in favor of Defendant on Count I for breach of contract and/or under the FLSA.

### B. Count III—Negligence

Count III asserts a negligence claim against Defendant.  From approximately August 6, 2018 to August 14, 2018, members of the Zook Nance Group checked into the 21c Museum Hotel.  Plaintiff alleges these individuals and/or their guests smoked marijuana in their hotel room(s) and that she was exposed to the second-hand smoke while performing her duties for Defendant.  Plaintiff alleges that Defendant had a duty to provide her a safe workplace, that Defendant breached its duty by allowing these individuals to smoke in the hotel and/or by failing to remove them from the premises.  Plaintiff further alleges that her "health was put at risk" and "caused her to start back to smoking cigarettes and there was lost income from not being able to perform the services, as she had since 2012."  (Doc. #30, p. 5, ¶ 55.)

"[I]n any action for negligence, the plaintiff must establish that [1] the defendant had a duty to protect the plaintiff from injury, [2] the defendant failed to perform that duty, and [3] the defendant's failure proximately caused injury to the plaintiff." *L.A.C. v. Ward Parkway Shopping Ctr., Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002) (citations and quotations omitted).[11]  "Whether a duty exists is purely a question of law."  *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 721 (Mo. App. W.D. 2015) (citations and quotations omitted).  As explained below, the record shows that Plaintiff lacks evidence to support these elements.

---

[11] The parties appear to agree, and the Court finds, that Plaintiff's negligence claim is governed by Missouri substantive law.

12

### 1. The Record Does Not Support a Finding that Defendant Breached Any Duty

Under Missouri law, an employer generally has a duty to employees to provide a safe workplace. *Hamilton v. Palm*, 621 F.3d 816, 818-19 (8th Cir. 2010) (applying Missouri law). To show a breach of that duty, a plaintiff must present evidence that the employer "fail[ed] to exercise reasonable care to perform its undertaking." *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 655 (Mo. banc 2019) (citations and quotation marks omitted). "[W]here different reasonable conclusions may be supported by the facts of a case, the question of negligence is almost always for the jury." *Howell v. Welders Prods. & Servs., Inc.*, 627 S.W.2d 311, 312 (Mo. App. W.D. 1981).

In this case, the evidence supports only one reasonable conclusion; namely, that Defendant did not breach its duty to provide a safe workplace. Defendant has a smoke-free policy which is posted on the hotel's website. Potential guests are informed of this policy at the time they book a room. A guest that violates the policy is charged a fee to deep clean the room. The hotel may use fans and ozone machines to alleviate any order caused by a violation of the policy.

Upon review of the record, the Court agrees with Defendant that:

> All the evidence supports that 21c Management exercised reasonable care when it learned of the smoking violations . . . In response to the[] complaints, Defendant asked the Zook Nance Group to stop smoking in the hotel. Upon the group's check-out from the hotel, Defendant placed fans and ozone machines in certain guest rooms and deep cleaned the rooms to mitigate the odor. The hotel also charged the group $5,000 in smoking fees and $1,867.46 in reimbursement for rooms lost due to the marijuana smell related to violations of the hotel's smoking policy. 21c Management did not have a duty to ask the guests to leave the premises. Instead, it acted reasonably in following its procedures and policies by asking the group to stop smoking in the hotel and taking action to mitigate the odor from the smoking.

(Doc. #113, pp. 26-27) (citations omitted). Plaintiff has failed to present evidence that Defendant could have, but failed, to take additional reasonable actions. Under these circumstances, Defendant is entitled to summary judgment on Plaintiff's negligence claim because the record does not support a finding that any duty was breached.

### 2. The Record Does Not Support a Finding of Causation

Even if Defendant had breached a duty, Plaintiff must also present evidence showing her injuries were caused by the breach. To show causation, a defendant's acts or omissions must be both the cause in fact and the proximate cause of a plaintiff's injuries. *Tompkins v. Cervantes*, 917 S.W.2d 186, 190 (Mo. App. E.D. 1996). In general, cause in fact is evaluated using a "but for" analysis. "[I]t must be shown that, but for the tortfeasor's conduct, the injured party would not have been damaged." *Id.* Proximate cause may be shown if a plaintiff's injuries were "the natural and probable result" of the defendant's conduct. *Id.* (quotations omitted).

In this case, Plaintiff has failed to present evidence showing that any alleged breach by Defendant caused her to begin smoking again. In her opposition brief, Plaintiff expressly "agree[s]" that she smoked cigarettes for approximately 40 years, quit smoking in 2014 or 2016, and started smoking again in July 2018. (Doc. #113, p. 14, ¶¶ 85-87; Doc. #118, p. 6, ¶¶ 85-87.) Because Plaintiff started smoking before members of the Zook Nance Group checked into the hotel, she cannot show that any breach by Defendant caused her to start smoking again. Plaintiff also admits she has no medical opinion regarding whether any smoking violation at the hotel caused her any health problems.

Plaintiff appears to contend that the smoking violations caused her lost income by rendering her unable to donate plasma. However, Plaintiff agrees that there was only an eight-week period in which she was unable to donate plasma. (Doc. #113, p. 15, ¶ 97; Doc. #118, p. 7,

14

¶ 97.) Plaintiff also agrees that the "deferral was due to cell loss," and has not presented evidence that the cell loss was caused by her smoking or by any breach by Defendant. (Doc. #113, p. 15, ¶ 98; Doc. #118, p. 7, ¶ 98.) Consequently, Plaintiff has failed to show that any alleged breach by Defendant caused her to be unable to donate plasma.

For all these reasons, and for the additional reasons stated by Defendant, summary judgment is granted in favor of Defendant on Count III for negligence.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

(1) Defendant's Motion for Summary Judgment (Doc. #109) is GRANTED and this case is DISMISSED WITH PREJUDICE; and

(2) Plaintiff's Motion to Allow Two Witnesses to Appear via Video Conferencing for Trial (Doc. #114), Defendant's Motions in Limine (Doc. #122), Plaintiff's Motion to File Amended Initial Discloser [sic] Out of Time (Doc. #126), and Plaintiff's Motion in Limine (Doc. #130) are DENIED AS MOOT;[12] and

(3) the Clerk of Court shall mark this case as closed.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: February 4, 2022

---

[12] The Court has reviewed each pending motion, and none of the motions alter any of the rulings herein.